Case 1:23-cv-00259-RLY-TAB   Document 1   Filed 02/09/23   Page 1 of 20 PageID #: 1

FILED
02/09/2023
U.S. DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
Roger A.G. Sharpe, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

TRAVIS EVANS,
    Plaintiff,

v.

CENTURION HEALTH SERVICE LLC, et al.,
    Defendant(s).

Case No. 1:23-cv-00259-RLY-TAB

JURY TRIAL DEMAND

## 42 U.S.C.S. 1983 CIVIL RIGHTS COMPLAINT FOR DAMAGES

### I. INTRODUCTION

Travis Evans, a prisoner incarcerated in the Indiana Department of Corrections, at New Castle Correctional Facility, brings this complaint against defendants CENTURION HEALTH SERVICE LLC. et al., alleging that they have and continue to violate his First Amendment and Eighth Amendment rights secured by the United States Constitution. Mr. Evans is seeking declaratory relief in addition to monetary damages for his pain suffering and mental anguish caused by the defendants acts and omissions.

### II. JURISDICTION

This Court has jurisdiction over the claims Mr. Evans has brought in this complaint pursuant to 28 U.S.C.S. 1331 and 1343.

## PARTIES

Plaintiff: Travis Evans #251714
1000 Van Nuys Road New Castle, IN. 47362

Defendant: CENTURION HEALTH SERVICE LLC.; CENTURION is currently contracted with the Indiana Department of Corrections to provide healthcare services to the IDOC's prison population. CENTURION's address is: 9245 North Meridian Street, Suite 100; Indianapolis IN. 46260.

Defendant: Jason G. Carter M.D. is employed by CENTURION, at New Castle Correctional Facility. Carter's address is: 9245 North Meridian Street, Suite 100; Indianapolis, IN 46260.

Defendant: Sgt. Gilbert, a Correctional officer employed by the Geo Group Inc., at New Castle Correctional Facility. Sgt. Gilbert's address is: 1000 Van Nuys Road, New Castle, Indiana 47362.

Defendant: Sgt. Gard, a Correctional officer employed by the Geo Group Inc., at New Castle Correctional Facility. Sgt. Gard's address is: 1000 Van Nuys Road, New Castle, Indiana 47362

Defendant: Emry Mcalear, Health Services Administrator employeed by CENTURION, at New Castle Correctional Facility. Mcalear's address is

9245 North Meridian Street, Suite 100; Indianapolis, IN 46260.

Defendant: Caldwell is a Unit Team Manager employed by the Geo Group Inc. at New Castle Correctional Facility. Caldwell's address is: 1000 Van Nuys Road, New Castle, Indiana 47362.

Defendant: Brooke Maves is a mental health professional employed by CENTURION at New Castle Correctional Facility. Mave's address is: 9245 North Meridian Street, Suite 100; Indianapolis, Indiana 46260.

All defendant's are sued in their individual capacities and liable for their violations of Mr. Evans' rights secured by the United States Constitution.

## STATEMENT OF FACTS

1. On May 9, 2022 inmate Robert Lewis sent a kite (written note) to inmate Shawn Lane which informed Mr. Lane of Mr. Lewis's intention to attack two other inmates; myself, Travis Evans and inmate Kevin Campbell. Mr. Lane reportedly gave the kite to Nightshift Correctional Officer Thompson, who inturn passed it up the chain of comanand to her supervisor.

2. On the morning of May 10, 2022 Sergeants Gilbert and Gard who had been notified about the impending attack entered pod M4 to conduct a search of Mr. Lewis' cell at or about 6:07 AM. Once Mr. Lewis had been removed from his cell location a subsequent search yeilded a large quantity of intoxicants which are prohibited in the Indiana Department of Corrections so the said intoxicants were confiscated by the sergeants. Ultimately inmate Lewis was allowed to return to his cell in pod M4 despite the fact that Sergeants Gilbert and Gard knew that me and Kevin Campbell lived in pod M4 with Mr. Lewis.

3. A short while after Mr. Lewis was returned to his cell, his recreation line was ran. By the time Mr. Lewis' recreation line was ran, me and inmate Campbell were already out in the hallway of M unit working as hallway workers, however, prior to Mr. Lewis being let out I needed to use the rest room so I asked the C.O. to let me use it in my cell.

4 of

4. Upon exiting my cell I headed down the stairs in pod MH towards the door back to the hallway but before I could get out of the pod Mr. Lewis began to assault me with a padlock. During the assault by Mr. Lewis I was struck in my head and shoulder from behind, and my left arm as I attempted to block the attack.

5. Sergeants Gilbert and Gard had direct knowledge of the impending attack before I was assaulted despite the facts in front of them they took no meaningful steps to prevent said attack.

6. A reasonable Jury could conclude that Sergeants Gilbert and Gard's acts and omissions constitute a violation of the Eighth Amendment for failing to protect me from the aforementioned attack.

7. After being assaulted with a deadly weapon I sought emergency medical assistance. Based on my prior law enforcement medical training and experience I recognized I was exhibiting signs and symptoms of a concussion and informed custody staff of the need for care.

8. At approximately 8:00 AM, Dr. Jason Carter arrived in M Un to conduct sick call appointments. Shortly after Dr. Carter

9. arrived in m unit I witnessed one of the Correctional Officers advise Dr. Carter that I had been attacked with a deadly weapon (padlock) and sustained blows to my head. I heard Dr. Carter tell the officer that he wasn't there to see me and that I had to put in a health care request form. I also heard custody staff notify Dr. Carter that I could possibly have a concussion, to which he replied he wasn't there to see me.

10. Indiana Department of Corrections Health Care Service Directive ("HCSD") 2.04 A titled: Access to Healthcare along with the American Correctional Association healthcare standards are the two guide post which CENTURION and their employees are required to adhere to in the preformance of their contractual duties with the IDOC.

11. HCSD 2.04 A purpose describes the IDOC's obligation to provide offenders with healthcare services necessary for the treatment of serious health conditions, as guaranteed by the United States Constitution. Exhibit 1.

12. HCSD 2.04 A defines a medical or health emergency as "A serious health problem, usually presenting unexpectedly, which can lead to loss of life or limb, or other serious morbidity,"... and goes on to state that "no delay in provision is acceptable." Id.

3. As the Medical Director of New Castle Correctional Facility Dr. Carter was obligated once he had been notified about my serious medical needs to provide me with immediate care, however, Carter disregarded the risk to my health that being attacked with a deadly weapon presented.

4. A reasonable Jury could conclude Dr. Carter's acts and omissions delayed and/or denied me medical care for serious medical needs in violation of my Eighth Amendment rights secured by the United States Constitution.

15. On or about May 31st, 2022 I submitted a healthcare request form ("HCRF") seeking mental health services because I was expriencing mental health issues post being attacked with a deadly weapon. My HCRF was placed in the medical pick up box which sits in the hallway of M unit.

16. On June 10, 2022 while working in the M Unit hallway I appoached Health services Administrator Emry Mcalear and asked him why my HCRF was still in the medical pick up box ten days after I'd placed it there. I explained to Mr. Mcalear that I had been assualted with a deadly weapon in May of 2022 and as a result was experiencing anxiety, and insomnia ect....

17. HSA Mcalear walked over to the medical pick up box took out a key and opened it before removing from the box my HCRF, which was the only one in the box. Mcalear read my HCRF and acknowledged that the form had appeared to have been in the pick up box for a while.

3. I explained to Mcalear that I was having mental health problems related the attempt on my life and that Dr. Carter had refused to see me the day of the attack.

19. Mcalear acknowledged the fact that I needed to be seen by mental health immediately telling me that if I had not been sleeping that that was a serious issue. Mcalear informed me that he would send a mental health professional to see me before the end of that day.

20. I asked Mr. Mcalear why my HCRF had been left in the pick up box for so long. Mr. Mcalear admitted that he had not got around to training all of the healthcare professionals on how and when to collect HCRFs. Mcalear took my HCRF with him when he left my unit.

21. HSA Mcalear never notified any mental health professional about my mental health needs and it was another ten days before I was even approached by mental health.

22. As the Health Care Services Administrator Emery Mcalear is the CENTURION employee responsible for training CENTURION'S employees here at New Castle Correctional Facility on all of the Indiana Department of Corrections Healthcare Services Directives, and the implementation of said Healthcare Services Directives.

23. According to HCSD 4.03 A "Adult Mental Health Services" Offenders may access mental health services by submitting State Form 45913, "Request for Health Care Services," or they may be referred for mental health services by facility staff. Offenders must be seen in accordance with the priorities and provisions of Health Care Services Directive 2.04 A, "Access to Care." When routine services are requested, the Offender shall be seen by an MHP within seven (7) calendar days of receipt of a Request for Health Care Services form or referral by facility staff unless the request or referral for services is urgent or emergent. An Offender requiring crisis stabilization services shall be seen immediately by an MHP, or nursing staff shall contact an appropriate MHP for direction."

24. Mr. Mcalear was notified by my HCRF that I was experiencing an urgent or at the very least emergent mental health situation i.e. insomnia but he disregarded the risk presented to my mental health because of said lack of sleep. As a direct result of HSA Mcalears failure to notify a MHP about my mental health situation I was delayed care for a serious medical need.

25. Mr. Mcalear was required to properly train CENTURION employees at New Castle Correctional Facility on Health Care Services Directive 4.03A, however, he failed to do so knowingly causing me to be delayed mental health services for a serious medical need.

26. A reasonable jury could conclude that HSA Emry Mcalear's acts and omissions caused me to be delayed mental health care for serious medical needs and that the aforementioned acts and omissions by HSA Mcalear constitute deliberate indifference to serious medical needs and cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

27. On June 20, 2022 I was scheduled to see Mental Health Professional Brooke Mawes. Mawes had other offenders scheduled to be seen on this day besides myself. Since I worked out in the m-unit hallway I observed Mawes providing mental health services in a closed setting. When it was my turn to be seen by MHP Mawes she refused to see me in a private setting, telling me that if I wished to see her it would have to be in the m-unit hallway because she didn't have time to see me in the first place.

28. According to Health Care Services Directive 4.03A: "Regardless of housing assignment, offenders must have access to Mental Health Services necessary to screen for mental illness, and treat mental illness. Mental health services must be provided in a manner which affords the offender confidentiality and provides physical protection for the staff."

29. Maves refusal to see me caused me to be delayed mental health care for a serious medical need.

30. MHP Maves acts and omissions constituted deliberate indifference to a serious medical need and a reasonable jury could conclude that she violated my Eighth Amendment rights secured by the United States Constitution.

31. On June 14, 2022 as a result of me putting in a HCRF on or about the day I was attacked (May 10, 2022) I was called out to be seen by Dr. Carter. At this provider visit I informed Dr. Carter that custody staff Captian Lunsford had taken me to get a x ray after Carter refused to see me on May 10, 2022 but the x ray technician had only conducted imaging of my left arm. Dr. Carter said that he had way to many people to see in M unit and it was impossible for him to see us all by himself. Dr. Carter next made a phone call attempting to locate the results from my x ray but ulitimately was unable to do so. Despite the fact that CENTURION had no record and/or couldn't locate the X ray of my arm Dr. Carter refused to order an additional X ray and was ready to conclude the providers visit without even examining me until I pulled my shirt off and showed him my shoulder that had also been injured in the attack. Dr. Carter said he didn't realize that the blows had been so close to my clavicle. Dr. Carter said he would order a x ray of my shoulder but not my arm. I also told Carter that I was

having trouble and experiencing pain trying to climb in and out of my top bunk because of my injuries. I advised Dr. Carter that the pain meds off of commissary had not worked and wanted to know if he could put me in for a bottom bunk pass. Dr. Carter refused my request for him to order me a bottom bunk pass even when I had provided a demonstration for him that I could barely lift my arm above my chin. Dr. Carter concluded the provider visit without ever providing a physical examination of me and never scheduled a follow up visit, he did however order me the same tylenol for my pain I had explained had not worked. Dr. Carters aforementioned acts and omissions caused me to be delayed and/or denied medical care for my serious medical needs.

32. A reasonable jury could conclude that Dr. Carters acts and omissions constitute deliberate indifference and cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

33. On or about September 30, 2022 I approached Unit Team Manager to request health care request forms, grievances, and grievance appeals. After I had made my request for the aforementioned forms UTM Caldwell, she told me she didn't know why I would ask her for anything after I had mentioned her name in a grievance. I explained to UTM Caldwell that I was entitle to health

care request form and was required to exhaust my administrative remedies on the Facility level regarding me being attacked with a deadly weapon. UTM Caldwell even refused to contact mental health on my behalf after I'd communicated to her that her acts and omissions were causing me to be depressed all because I had filed a grievance.

4. A reasonable jury could conclude that Unit Team manager Caldwell's aforementioned acts and omissions constituted retaliation for the exercise of my First Amendment rights in violation of the United States Constitution.

5. CENTURION maintains a widespread custom of Failing to maintain complete and adequate medical records this is evidenced by the fact that Dr. Carter was not able to pull up my x ray results of my arm, causing me to be denied care for a serious medical need. I am not the only person this Custom of failing to maintain complete and adequate medical records has affected. Exhibit(s) No.   .

36. CENTURION maintains a widespread custom of failing to provide health care request forms so that inmates can access the prison healthcare system. This is evidenced by the fact that I was unable to obtain healthcare request forms when I was in need of mental health services and in need of health care services. I am not the only person this custom of failing to provide healthcare forms has affected. Exhibit(s) No.   .

37. CENTURION's widespread custom of failing to properly triage health care request forms in a timely manner this is evidenced by the fact that my health care request form was in the medical box for over 10 days when the actual policy HCSD 2.04 A requires triage of healthcare request forms to take place within 24 hours. I am not the only person this custom of failing to properly triage Health care request forms has affected. Exhibit(s) No.  .

38. CENTURION's widespread custom of failing to schedule nurse sick calls and providers visit in a timely manner. this is evidenced by the fact that multiple aforementioned healthcare personel cited staffing shortages by CENTURION as the reason they were unable to schedule nurse and provider visits. I am not the only person this custom of failing to schedule nurse sick calls and provider visits has affected. Exhibit(s)No.  .

39. CENTURION's wide spead custom of failing to hire enough medical and mental health personnel to provide health care services in a timely manner this is evidenced by the fact the multiple of the aforementioned health care personnel cited shortages of staffing as the reason they were denying and/or delaying me care. I am not the only person this custom of failing to hire enough medical and mental health personnel to provide health care services in a timely manner is affected.  Exhibit(s) No.  .

10. CENTURION's Final decision makers at the Facility level have all been notified about the aforementioned customs causing inmates delays and/or denials in care for serious medical needs but have implemented no meaningful measures to correct the problems. As a result of CENTURION's acts and omissions, I was delayed and/or denied care for serious medical needs in violation of my Eighth Amendment rights secured by the United States Constitution. A reasonable jury could conclude that CENTURION HEALTH SERVICE LLC is liable to me for their acts and omissions that caused my Constitutional rights to be violated.

## CLAIMS

Mr. Evans incorporates all paragraphs 1-40 in their entierty into his Claims.

CENTURION maintains widespread customs and/or practices of: (1) Failing to maintain complete and adequate medical records; (2) Failing to provide healthcare request forms so that inmates can access the prison healthcare system; (3) Failing to properly triage healthcare request forms in a timely manner; (4) Failing to schedule nurse sick calls and provider visits in a timely manner; and (5) Failing to hire enough medical and mental healthcare personnel to provide healthcare services in a timely manner. CENTURION'S widespread customs and/or practices caused Mr. Evans to be delayed access to medical care for serious medical needs. CENTURION'S acts and omissions constitute deliberate indifference to Mr. Evans' serious medical needs and cruel and unusal punishment in violation of the Eighth Amendment of the United States Constitution

Jason Carter was deliberately indifferent to Mr. Evans' serious medical needs when he: (1) refused to medically assess Mr. Evans on May 10, 2022 after Mr. Evans had been attacked with a deadly weapon resulting in injury; (2) refused to order a x-ray of Mr. Evans arm despite the fact that he was unable to locate Mr. Evans' x-ray results; and (3) refusing to assign Mr. Evans a bottom bunk pass despite the fact that Mr. Evans was experiencing pain and discomfort

in his shoulder that he used to climb up on his top bunk. Carter's acts and omissions delayed and/or denied Mr. Evans access to healthcare and/or prolonged his pain and suffering from a serious medical need. Carter's acts and omissions constitute deliberate indifference to serious medical needs and cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

Brooke Maves was deliberately indifferent to Mr. Evans serious medical need when she: (1) refused to provide Mr. Evans with mental healthcare. Maves' acts and omissions delayed and/or denied Mr. Evans access to healthcare for a serious medical need. Maves acts and omissions constitute deliberate indifference to a serious medical need and cruel and unusual punishment in violation of Eighth Amendment of the United States Constitution.

M. Caldwell violated Mr. Evans' First Amendment rights when she retaliated against Mr. Evans for exercising his First Amendment right to file a grievance. Caldwell's acts and/or omissions of: (1) denying Mr. Evans access to the court, (2) refusing to re-classify Mr. Evans to his previous employment position, and (3) relocating Mr. Evans housing location all because Mr. Evans had filed a grievance which merely mentioned her constitutes retaliation in violation of the First Amendment of the United States Constitution.

Sgt. Gilbert and Sgt. Bard violated Mr. Evans' Eighth Amendment rights secured by the United States Constitution by failing to protect him from attack. Sgt. Gilbert and Sgt. Bard were provided with information that an attack on Mr. Evans was going to take place and took no meaningful action to prevent the attack that occurred less than a few hours later. Sgt. Gilbert and Sgt. Gard's conscious, and culpable refusal to prevent Mr. Evans from being attacked can be inferred from their failure to prevent said attack as a violation of Mr. Evans' Eighth Amendment rights secured by the United States Constitution for failure to protect.

Emry Mcalear was deliberately indifferent to Mr. Evans serious medical need i.e. mental health care when he: (1) disregarded Mr. Evans' mental health issues; (2) Failed to properly triage Mr. Evans healthcare request form, and (3) Failed to properly train CENTURION health care professional on how and when they are to collect health care request forms. Mcalear's acts and omissions delayed Mr. Evans access to mental health care thereby prolonging his mental and emotional anguish from being attacked with a deadly weapon. Mcalear's acts and omissions constitute deliberate indifference to a serious medical need and cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Evans respectfully request this Court make entry of Judgment in the following:

Declaratory relief declaring that the defendants Violated Mr. Evans rights secured by the First and Eighth Amendment of the United States Constitution.

A. Compensatory damages in the amounts of:

1. For Caldwell's First Amendment Violations she is liable $300,000;

2. For CENTURION's Eighth Amendment Violations they are liable $800,000;

3. For Carter's Eighth Amendment Violations he is liable $400,000;

4. For Mave's Eighth Amendment Violations she is liable $100,000;

5. For Mcalear's Eighth Amendment Violation's he is liable $200,000;

6. For Gilbert's Eighth Amendment Violation's he is liable $500,000;

7. For Gard's Eighth Amendment Violation's he is liable $500,000.

The aforementioned damages reflect Mr. Evans continued mental and emotional distress.

19 of 20

B. Punitive damages to be assessed against each defendant Joint and Severally at trial by the Jury.

Respectively Submitted

x _____

Travis Evans # 251714

Pursuant to 28 U.S.C. § 1746, I declare and verify under penalty of perjury under laws of the United States of America the foregoing is true and correct.

x _____